Saunders V. DORSEY, et al., Plaintiffs,

v.

CITY OF DETROIT, et al., Defendants.

No. 99–CV–75381–DT.

United States District Court,
E.D. Michigan,
Southern Division.

June 6, 2001.

Sean M. Tate, Bloomfield Law Center, Bloomfield, MI, Saunders V. Dorsey, Farmington Hills, MI, for plaintiffs.

Michael M. Muller, City of Detroit, Law Department, Detroit, MI, James P. Feeney, Bloomfield Hills, MI, for City of Detroit.

Charles C. Cheatham, Cheatham, Estes, Leahy & Holman, P.C., West Bloomfield, MI, for Tanglewood Golf Course and Mystic Creek Golf Course.

Steven M. Potter, Potter, Carniak, Anderson & DeAgostino, Auburn Hills, MI, for Pine Knob Golf Course.

Francis P. Dempsey, Davis & Acho, P.C., T. Joseph Seward, Livonia, MI, Susan P. Ward, Southfield City Legal Department, Southfield, MI, for Beachwoods Golf Course.

Simcha Shapiro, Spilkin & Shapiro, Southfield, MI, for Links of Novi.

Miriam L. Rosen, Butzel Long, Birmingham, MI, David W. Berry, Ronald E. Reynolds, Berry & Reynolds, Farmington, MI, for Links of Pinewood.

John C. Clark, Thomas J. McGraw, Cox, Hodgman, & Giarmarco, P.C., Troy, MI, for Fieldstone Golf Course.

Steven G. Freers, Warren, MI, for Heather Highlands.

J. Steven Johnston, Bigler, Berry, Johnston, Stykiel & Hunt, P.C., Troy, MI, for Fox Hills Golf Course, Fox Hills, Incorporated, and Stonebridge L.P.

S. Randall Field, Johnson, Rosati, Garcia, LaBarge, Aseltyne & Field, P.C., Farmington Hills, MI, for Pheasant Run Golf Course.

Christopher E. Le Vasseur, Stark, Reagan, & Finnerty, PC, Troy, MI, Ann Merry, Southfield, MI, for Pine Trace Golf Course and Cherry Creek Golf Course.

Thomas M. Peters, Vandeveer, Garzia, P.C., Troy, MI, Terrance P. Lynch, Southfield, MI, for Dunham Hills Golf Course.

James C. Zeman, Bellanca, Beattie, & Delisle, P.C., Harper Woods, MI, for Devil's Ridge Golf Course.

Cheryl A. Yapo, Wayne County Corporation Counsel, Detroit, MI, for Inkster Valley Golf Course.

Thomas C. Manchester, Ypsilanti, MI, for Eagle Crest Golf Course.

J. Steven Johnston, Robert M. Giroux, Jr., Michael L. Updike, Farmington Hills, MI, for Stone Bridge Golf Course.

Robert M. Giroux, Jr., Secrest, Wardle, James P. Feeney, Lennox Emanuel, Bloomfield Hills, MI, for Rouge Park Golf Course.

James P. Feeney, Lennox Emanuel, Bloomfield Hills, MI, for American Golf Course.

### *OPINION AND ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S JURY DEMAND AND DISMISSING IN PART PLAINTIFF'S CLAIMS FOR MONETARY DAMAGES*

DUGGAN, District Judge.

Plaintiff Saunders Dorsey has filed various claims for monetary and injunctive relief against Defendants, City of Detroit Golf Course, River Rouge Golf Course, Pine Trace Golf Course, and Cherry Creek Golf Course [1] under the Americans with Disabilities Act ("ADA"), as well as Michigan's Person's with Disabilities Civil Rights Act. This matter is currently before the Court on Defendants' challenge to Plaintiff's jury demand and claim for monetary damages. According to Defendants, neither the ADA nor Michigan's Act provide for a jury trial or monetary damages. For the reasons stated below, Plaintiff's jury demand shall be granted in part, and

---

1. All other defendants have been dismissed from this action.

denied in part, and Plaintiff's claims for monetary damages shall be dismissed in part.

### 1. Title II Claims

■ Plaintiff's claims against the City of Detroit and River Rouge Golf Courses are governed by Title II of the ADA, which applies to state and local governments. Plaintiff seeks injunctive relief as well as damages "for his personal experiences of being denied access, humiliation, emotional distress, [and] embarrassment." (Am. Compl.¶ 25). Title II of the ADA specifically incorporates the remedial provisions of section 794a of the Rehabilitation Act, 29 U.S.C. § 794a, as its enforcement provision. 42 U.S.C. § 12133. The relevant provision of section 794a of the Rehabilitation Act[2] incorporates the "[t]he remedies, procedures, and rights set forth in title VI of the Civil Rights Act of 1964 [42 U.S.C.A. § 2000d et seq.]." See 29 U.S.C. § 794a(b). The remedy provision in Title VI of the Civil Rights Act provides that "remedies (including remedies both at law and in equity) are available for such a violation to the same extent as such remedies are available for such a violation against any public or private entity...." 42 U.S.C. § 2000d–7.

Relying upon Tyler v. City of Manhattan, 849 F.Supp. 1442 (D.Kan.1994), Defendants contend that Title II does not provide for monetary damages or a trial by jury. The Sixth Circuit, however, has specifically held that although punitive damages are not permitted under Title II of the ADA, compensatory damages are permitted. See Johnson v. City of Saline, 151 F.3d 564, 572–73 (6th Cir.1998). As to Defendants' argument that neither Title II of the ADA nor section 794a of the Reha-

bilitation Act allow damages for mental anguish, emotional distress, and humiliation, the Court finds the Sixth Circuit's decision in Johnson to indicate exactly the opposite. In Johnson, the plaintiff sought damages for "physical damage ..., psychological and emotional trauma, humiliation and embarrassment, anxiety, and pain and suffering." Id. at 572–73. The Sixth Circuit specifically held that compensatory damages for such claims are available under Title II of the ADA. Id. at 573.

■ Title II of the ADA mandates that "no qualified individual with a disability shall, by reasons of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by such entity." 42 U.S.C. § 12132. To succeed on his claim under Title II, Plaintiff must establish "(1) that he is a qualified individual with a disability; (2) that he was either excluded from participation in or denied the benefits of some public entity's services, programs, or activities or was otherwise discriminated against; and (3) that such exclusion, denial of benefits, or discrimination was by reason of [his] disability." Parker v. Universidad de Puerto Rico, 225 F.3d 1, 5 (1st Cir.2000).

The ADA defines "qualified individual with a disability" as "an individual with a disability who, with or without reasonable modifications to rules, policies, or practices, the removal of architectural, communication, or transportation barriers, or the provision of auxiliary aids and services, meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity." 42 U.S.C. § 12131(2).

---

**2.** Section 794a(a) applies to discrimination in employment under 29 U.S.C. § 791, whereas section 794a(b) applies to other types of dis-

crimination under 29 U.S.C. § 794, including structural modifications.

As the Sixth Circuit has stated, "Title II only requires reasonable modifications, otherwise, the would-be plaintiff is not a [qualified individual with a disability]." *Johnson,* 151 F.3d at 571 (citing 42 U.S.C. § 12131(2)). With respect to existing facilities, *i.e.,* facilities that were constructed before passage of the ADA, "[a] public entity must make its service, program, or activity 'when viewed in its entirety,' 'readily accessible to and usable by individuals with disabilities,' except where compliance would result in a 'fundamental alteration' or an 'undue burden.'" *Id.* (quoting 28 C.F.R. § 35.150).

Whether Plaintiff is a qualified individual with a disability, *i.e.,* whether the accommodations requested by Plaintiff were reasonable; whether Plaintiff was excluded from or denied Defendants' services, programs, or activities; whether such exclusion was due to Plaintiff's disability; and whether the alterations requested by Plaintiff would work a "fundamental alteration" of Defendants' facilities, or work an "undue burden" on Defendants, are all questions for the jury. In essence, it is for the jury to decide whether Plaintiff has been discriminated against in violation of the ADA, as well as any compensatory damages flowing therefrom. As with any request for injunctive relief, however, the Court shall determine whether injunctive relief is mandated in this case.

In summary, the Court finds that compensatory damages are available under Title II of the ADA, and that Plaintiff is entitled to a trial by jury with respect liability and damages. The issue of injunctive relief, however, shall be determined by the Court.

## 2. *Title III Claims*

■ Title III of the ADA applies to Plaintiff's claims against privately-owned Pine Trace and Cherry Creek Golf Courses. Plaintiff seeks injunctive relief as well as damages for "his personal experiences of being denied access, humiliation, and emotional distress, [and] embarrassment." (Am.Compl.¶ 25). In relevant part,[3] Title III's enforcement provision states:

(1) Availability of remedies and procedures

The remedies and procedures set forth in section 2000a–3(a) of this title are the remedies and procedures this subchapter provides to any person who is being subjected to discrimination on the basis of disability in violation of this subchapter . . .

(2) Injunctive relief .

In the case of violations of sections 12182(b)(2)(A)(iv) [failure to remove architectural barriers] and section 12183(a) [new construction and alterations] of this title, injunctive relief shall include an order to alter facilities to make such facilities readily accessible to and usable by individuals with disabilities to the extent required by this subchapter. . . .

42 U.S.C. § 12188(a). As referred to by the above provision, section 2000a–3(a) states:

Whenever any person has engaged or there are reasonable grounds to believe that any person is about to engage in any act or practice prohibited by section 2000a–2 of this title, *a civil action for preventive relief, including an application for a permanent or temporary injunction, restraining order, or other or-*

---

**3.** The ADA also contains an enforcement provision as to enforcement by the Attorney General. *See* 42 U.S.C. § 12188. Such provision is obviously not relevant to this controversy as Plaintiff is not the Attorney General and is not proceeding on behalf of the Attorney General.

*der*, may be instituted by the person aggrieved .... `

42 U.S.C. § 2000a–3(a) (emphasis added).

Title III of the ADA does not provide for monetary damages or, concomitantly, a jury trial, when the action is brought by a "person who is being subjected to discrimination." 42 U.S.C. § 12188(a)(2).[4] *See also Gonzales v. National Bd. of Med. Examiners*, 225 F.3d 620, 635 (6th Cir. 2000) (Gilman, J., dissenting) (stating that it "appears doubtful" that Title III plaintiffs are entitled to jury trial as Title III permits only injunctive relief) (citing cases); *Smith v. Wal–Mart Stores, Inc.*, 167 F.3d 286, 293 (6th Cir.1999) (recognizing that Title III enforcement statute, 42 U.S.C. § 12188, which incorporates the remedies of 42 U.S.C. § 2000a–3(a), does not include money damages); *see also Fischer v. SJB–P.D. Inc.*, 214 F.3d 1115, 1120 (9th Cir.2000) ("Monetary relief is not an option for private individuals under Title III of the ADA. As a result, a plaintiff who files an ADA claim can at most hope to improve access through an injunction."); *Jairath v. Dyer*, 154 F.3d 1280, 1283 n. 7 (11th Cir.1998) (noting that all parties agreed monetary damages are only available under Title III if cause of action initiated by Attorney General).

Therefore, as to Plaintiff's claims under Title III of the ADA against Pine Trace and Cherry Creek Golf Courses, the Court finds that Plaintiff is not entitled to monetary damages or a jury trial.

*3. Michigan's Persons With Disabilities Civil Rights Act*

Plaintiff also raises claims under Article 3 of Michigan's Persons with Disabilities Civil Rights Act ("the Act"), Mich. Comp. Laws § 37.1302. (Am.Compl.¶¶ 21–25). The administration provisions of the Act specifically provide that a person alleging a violation of the Act "may bring a civil action for appropriate injunctive relief or damages, or both." Mich. Comp. Laws § 37.1606(1). Such provisions further provide that the term " 'damages' means damages for injury or loss caused by each violation of this act, including reasonable attorneys' fees." *Id.* § 37.1606(3).

Defendants assert that there are no reported Michigan decisions awarding monetary damages to a private plaintiff proceeding under section 37.1302 and therefore, Plaintiff should not be allowed to seek such damages. In this Court's opinion, the absence of such decisions does not preclude Plaintiff's claim for monetary damages. The administration provisions of the Act specifically authorize claims for damages. These provisions do not distinguish Article 3 of the Act from any of the other provisions. Accordingly, absent a Michigan decision to the contrary, the Court is satisfied that Plaintiff is entitled to seek monetary damages for "injury or loss" caused by each of Defendants' alleged violations.

Defendants also contend that no jury is needed in this case because resolution of Plaintiff's claims under the ADA by this Court will necessarily resolve Plaintiff's claims under the Act. The Court rejects this argument. As discussed *supra*, with respect to Plaintiff's Title II claims against the City of Detroit and River Rouge Golf Courses, the issue of liability and damages will be tried to a jury. The only issue the Court will decided is the scope of any requested injunctive relief.

Furthermore, with respect to Plaintiff's claims under Title III of the ADA against

---

4. In contrast, § 12188(b)(2) explicitly allows a court to award monetary damages in an action brought by the Attorney General.

Pine Trace and Cherry Creek Golf Courses, this Court will determine only the issue of injunctive relief. To the extent that this Court finds there is a violation under the ADA warranting injunctive relief, there *may* also be a violation of Michigan's Act, as the two are essentially identical. Defendants, however, have cited this Court to no authority mandating that the results will necessarily be the same.

 Moreover, the Michigan Court of Appeals specifically held in *Smith v. University of Detroit*, 145 Mich.App. 468, 480, 378 N.W.2d 511 (1985), that "in a case such as this where both equitable issues and jury submissible issues coexist, the proper procedure is to hold trial before a jury and follow presentation of evidence with two separate factual determinations; court factfinding on the equitable claims and jury factfinding on the claims of damages." Accordingly, the Court finds that Plaintiff's claims under Michigan's Act shall be treated in the same manner as Plaintiff's Title II claims under the ADA, *i.e.*, the issue of liability and damages shall be tried to a jury, with the Court determining the issue of injunctive relief.

### Conclusion

For the reasons stated above

**IT IS ORDERED** that Plaintiff's jury demand is **DENIED** with respect to his Title III claims against Pine Trace and Cherry Creek Golf Courses and that Plaintiff's claims for monetary damages against Pine Trace and Cherry Creek Golf Courses are **DISMISSED,**

**IT IS FURTHER ORDERED** that Plaintiff's jury demand is **GRANTED** with respect to his Title II claims against the City of Detroit and River Rouge Golf Courses, and that Plaintiff is entitled to seek monetary damages with respect to such claims,

**IT IS FURTHER ORDERED** that Plaintiff's jury demand is **GRANTED** with respect to his claims under Michigan's Persons with Disabilities Civil Rights Act as to all four golf courses remaining in this action, and that Plaintiff is entitled to seek monetary damages with respect to such claims.